**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.R.D. AND T.M.D., MINOR CHILDREN | : | No. 26 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the Superior |
| | : | Court dated December 8, 2015 at No. |
| APPEAL OF: M.C., NATURAL FATHER | : | 1728 MDA 2013, affirming the Order of |
| | : | the Court of Common Pleas of |
| | : | Lycoming County, Orphans' Court |
| | : | Division, dated August 19, 2013 at No. |
| | : | 6365 |
| | : | |
| | : | ARGUED: May 10, 2016 |

**OPINION**

**JUSTICE TODD** **Decided: August 29, 2016**

In this appeal by allowance, we consider whether, in order to facilitate the termination of a biological father's parental rights, a grandfather may adopt his grandchildren with the children's mother — his daughter. For the reasons that follow, we find the "cause" exception in Section 2901 of the Adoption Act, 23 Pa.C.S. § 2901, does not, under such circumstances, excuse a mother from the Act's requirement that she relinquish her parental rights. Accordingly, as the contemplated adoption cannot proceed, we reverse the order affirming the termination of the father's parental rights.

By way of background, M.D. ("Mother") met M.C. ("Father") in 2002, when she was teaching in South Dakota, and the two became romantically involved, residing together until Mother returned to Pennsylvania in October 2003. Father briefly moved to Pennsylvania in January 2004 to be with Mother; however, the relationship quickly ended, and he ultimately returned to South Dakota. Shortly thereafter, Mother learned

that she was pregnant with twin boys, and she moved in with her parents, who resided in Lycoming County. Although Father was aware that Mother was pregnant with his children, Father and Mother spoke infrequently throughout the pregnancy, and he did not visit.

In October 2004, Mother gave birth to M.R.D. and T.M.D. ("Children"). Father visited for a few days following Children's birth and returned for visits in December 2004 and January 2006; however, Father did not visit again, and his subsequent efforts at maintaining a relationship with Children were marginal at best. Indeed, in February 2006, when Mother discussed the possibility of traveling with Children to South Dakota to visit with Father and his family, Father refused. Father provided no financial support after his January 2006 visit, and he sent Children no written correspondence after January 2007. Additionally, although Father called Mother in the spring of 2007, he sounded intoxicated, and Mother subsequently changed her telephone number to an unlisted number. Mother had no contact with Father after his last telephone call.

In 2009, despite having had no contact with Mother or Children for several years, Father, who is now married and has a family of his own, spoke with an attorney to discuss pursuing custody of Children. Although Father did not initially take any legal action, three years later, he attempted to contact Mother in November 2012 by leaving a voicemail at her place of employment. The voicemail did not mention Children, and Mother did not return the call. Father filed for custody of Children the next month.

By stark contrast, Mother's father, M.D. ("Grandfather"), has been a significant part of Children's lives since their birth, assuming a father-like role beyond that of a typical grandfather and regularly sharing parental duties with Mother. Indeed, according to the orphans' court,

> Grandfather has played a regular role in decision making in the boys['] lives. Grandfather attended school

conferences and has dealt with discipline issues as a team with Mother. Grandfather ha[s] traveled to doctor's appointment[s] with Mother. Grandfather and Mother have co-parented [Children.] Grandfather vacations with the boys. Grandfather assists in homework. Grandfather has disciplined the boys. Grandfather attends school functions with the boys. Grandfather has taken the boys to his place of employment and regularly along on jobs. . . . Grandfather has been [Children's] de facto father since birth. . . . Grandfather and Mother together have raised the boys. Grandfather's role in the children's lives extends far beyond the role of a typical grandparent. Grandfather is clearly one half of the parental unit that has raised the children. Grandfather's authority, control and influence over the children is equal to that of Mother.

Orphans' Court Opinion, 8/19/13, at 4. Grandfather's close relationship with Children continued even after Mother moved out of her parents' home in August 2006, and he has provided significant financial support to Mother, allowing Mother to live free of charge in his other home, also located in Lycoming County.

In response to Father's custody action, Mother and Grandfather filed a Petition for Involuntary Termination of Parental Rights and Adoption on January 29, 2013, and an amended petition on February 28, 2013. Therein, Mother and Grandfather argued that Father's parental rights over Children should be terminated pursuant to Section 2511 of the Adoption Act because Father had evidenced a settled purpose of relinquishing his parental claims over Children and refused to perform parental duties for seven years. With regard to the Act's requirement that the termination petition be filed in contemplation of an adoption, see 23 Pa.C.S. § 2512(b), Mother and Grandfather also averred that they anticipated that Grandfather would adopt Children and co-parent with Mother.

The orphans' court conducted a hearing on the petition on August 13, 2013. In support of their petition, Mother and Grandfather testified regarding Grandfather's extensive involvement with Children and Father's concomitant lack of involvement in

Children's lives, noting that Children, then almost 10 years old, did not know that Father existed until shortly before the hearing. Additionally, Mother explained that, although she eventually changed her telephone number, Father was aware of her prior address, which remained unchanged from August 2006 to 2010, and Father knew how to contact her parents, but failed to do so. Grandfather, for his part, expressed concern about providing for Children's education and financial future, stating that his present job as a college instructor would allow Children to attend college free of tuition if he were permitted to adopt them. Grandfather also explained that he had contemplated adopting Children for years, but claimed that he "didn't see a need" to proceed with the adoption earlier, as there had been no foreseeable threat that Father would seek custody. N.T., 8/13/13, at 27. In his defense, Father testified that he did not send Children cards or gifts because he was not sure if Mother's address had changed. Father also explained that he sought custody in order to become more involved in Children's lives and to form a relationship with them.

By way of background, Section 2511(a) of the Adoption Act provides statutory grounds for terminating a parent's rights to his or her child where any one of the nine enumerated grounds for termination is established by clear and convincing evidence, including, as relevant herein, "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). If the trial court finds the existence of one of the grounds for termination set forth in Section 2511(a), the court must then consider whether termination would best serve "the developmental, physical and emotional needs and welfare of the child" under Section 2511(b). Id. § 2511(b). The trial court

may grant a termination petition if it is satisfied that termination of the parent's rights is consistent with the best interests of the child.

Section 2512(a) of the Adoption Act sets forth the parties who may file a petition for involuntary termination, including, *inter alia*, a parent or an agency. Id. § 2512(a). In contrast to an agency petition, a parent petitioning to terminate the rights of the child's other parent must file a termination petition containing "an averment that the petitioner will assume custody of the child *until such time as the child is adopted*."[1] Id. § 2512(b) (emphasis added). Thus, the petitioning parent must demonstrate that an adoption of the child is anticipated in order for the termination petition to be cognizable. See In re B.E., 377 A.2d 153, 155 (Pa. 1977); In re Adoption of L.J.B., 18 A.3d 1098, 1107 (Pa. 2011) (plurality). Section 2512(b)'s adoption requirement is consistent with the rationale behind permitting the involuntary termination of a parent's rights, which we have explained is "to dispense with the need for parental consent to an adoption when, by choice or neglect, a parent has failed to meet the continuing needs of the child," rather than "to punish an ineffective or negligent parent, or provide a means for changing the surname of the child." B.E., 377 A.2d at 155; L.J.B., 18 A.3d at 1108 (quoting B.E.).

Because a termination petition filed by one parent against the other must occur in the context of an anticipated adoption, and because adoption is a statutory right, we note that the parent seeking termination must strictly comply with all pertinent provisions of the Adoption Act in order for the adoption to be valid. See In re Adoption of R.B.F., 803 A.2d 1195, 1199 (Pa. 2002) ("To effect an adoption, the legislative provisions of the Adoption Act must be strictly complied with."). While the Adoption Act provides that

---

[1] As noted, this requirement is excused if the petitioner is an agency. 23 Pa.C.S. § 2512(b) ("If the petitioner is an agency it shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists.").

"[a]ny individual may become an adopting parent," 23 Pa.C.S. § 2312, relevant to the instant matter, Section 2711 of the Act requires the parent seeking termination to consent to the adoption and to relinquish his or her parental rights. Id. § 2711(a)(3) (requiring consent to adoption by the parent of an adoptee who is under 18 years of age); § 2711(d)(1) (setting forth contents of consent, including the statement "I understand that by signing this consent I indicate my intent to permanently give up all rights to this child"). Requiring parental consent to the adoption and the relinquishment of his or her parental rights "permits the child and the adoptive parent or parents to establish a new parent-child relationship." B.E., 377 A.2d at 156. Thus, where "no new parent-child relationship is contemplated[,] . . . the involuntary termination of . . . parental rights . . . is not permitted under the Adoption Act." Id.; L.J.B., 18 A.3d at 1108 (quoting B.E.).

An exception to this relinquishment requirement exists, however, in second-parent adoption cases where the adopting party is the spouse of the parent seeking termination — that is, in the context of a stepparent adoption. Indeed, where the parent consents to an adoption of his child by his or her spouse — i.e., the stepparent — the consenting parent is permitted to retain his or her parental rights. See 23 Pa.C.S. § 2903. ("Whenever a parent consents to the adoption of his child by his spouse, the parent-child relationship between him and his child shall remain whether or not he is one of the petitioners in the adoption proceeding.").

Additionally, if the parent does not consent to relinquish his or her parental rights, the court nevertheless may enter an adoption decree upon "cause shown." Id. § 2901. In R.B.F., wherein parents sought to have their domestic partners adopt their children, but did not wish to relinquish their parental rights, we interpreted Section 2901's "cause shown" language as giving the trial court the discretion to grant an adoption petition in

circumstances where, as in that case, the party seeking adoption is unable to meet the statutory requirements for adoption, but has demonstrated cause for his or her noncompliance with those requirements. R.B.F., 803 A.2d at 1201-02.

Turning back to the instant case, following the termination hearing, the orphans' court found that Mother and Grandfather demonstrated cause pursuant to Section 2901 as to why the proposed adoption by Grandfather should be allowed to proceed despite the fact that Mother did not relinquish her parental rights, reasoning that Grandfather had already been acting as a parent to Children and that allowing him to adopt Children would "memorialize that status quo of [their] lives." Orphans' Court Opinion, 8/19/13, at 5. Thus, having found that Mother and Grandfather demonstrated that a valid adoption by Grandfather was anticipated, the court then evaluated the termination petition and concluded that Mother and Grandfather proved by clear and convincing evidence that Father failed to perform his parental duties for almost all of the preceding six years of Children's lives, thereby evidencing a "settled purpose of relinquishing parental claim" to Children warranting termination under Section 2511(a)(1). Finally, finding that no bond existed between Children and Father, the court held that involuntarily terminating Father's parental rights and permitting the adoption would best serve Children's developmental, physical, and emotional needs and welfare. Accordingly, the orphans' court granted the termination petition.

Father appealed the decision, challenging the termination of his parental rights, as well as the orphans' court's conclusion that Mother and Grandfather showed cause under Section 2901 of the Adoption Act to proceed with the anticipated adoption of Children by Grandfather. More specifically, Father alleged that the proposed adoption by Grandfather would not create a new family unit and that it was not in Children's best

interests, claiming that Grandfather petitioned to adopt Children solely to retaliate against Father's custody action.

In its Pa.R.A.P. 1925(a) opinion, the orphans' court reiterated its conclusion that Mother proved by clear and convincing evidence the prerequisites of Section 2511(a)(1), and that termination of Father's parental rights was in Children's best interests pursuant to Section 2511(b). The orphans' court also reasoned that Mother showed cause as to why the proposed adoption by Grandfather should proceed and that the adoption was in Children's best interests, specifically noting that it credited Grandfather's testimony that he had contemplated adopting Children for years, but did not see a need to do so until Father sought custody.

An *en banc* Superior Court panel affirmed in a 5 to 3 decision authored by President Judge Gantman. In re Adoption of M.R.D., 128 A.3d 1249 (Pa. Super. filed Dec. 8, 2015) (*en banc*). In so doing, the majority first recounted the evidence of record — including, most notably, that Father had not contacted, visited, or supported Children for almost six years — and opined that the evidence proved that Father demonstrated "both a settled purpose of relinquishing his parental claim to Children *and* a failure to perform his parental duties," thereby establishing grounds for termination under Section 2511(a)(1). Id. at 1264 (emphasis original). The majority also concluded that termination of Father's parental rights and adoption of Children by Grandfather was in Children's best interests under Section 2511(b), as competent evidence established that Grandfather's involvement with Children exceeded the role of a typical grandparent and that Mother filed the termination petition to "safeguard Children's best interests," rather than to retaliate against Father's decision to seek custody. Id. The majority emphasized that the orphans' court sat as fact-finder during the termination hearing and that its credibility findings in this regard were supported by the record.

While Father asserted that the proposed adoption would not create a new family unit, the majority disagreed. Specifically, the majority observed that the terms "new family unit" and "new parent-child relationship" are not used in the Adoption Act or defined in relevant case law, and it stressed that the Superior Court in In re Adoption of J.M., 991 A.2d 321 (Pa. Super. 2010), which similarly involved a mother and maternal grandfather who sought to terminate the father's parental rights to facilitate the adoption of the child by the grandfather, expressly rejected the notion that adoptive parents must cohabitate in order to create a new family unit for purposes of termination of parental rights and adoption. The majority further cautioned against defining a family unit with such a "rigid mindset," particularly in light of evolving societal norms, which the majority noted embrace a variety of familial structures beyond the traditional nuclear family. M.R.D., 128 A.3d at 1265. Thus, rather than focusing solely on cohabitation when determining whether the proposed adoption would create a new family unit in this case, the majority looked to the parental relationship that Grandfather had with Children and determined that adoption would legalize Grandfather's rights and obligations with respect to Children, thereby "establish[ing] the 'new' in the existing *de facto* parent-child relationship." Id. at 1266. Accordingly, based on the foregoing, the majority concluded that there was "cause shown" under Section 2901 to permit Grandfather to adopt Children while Mother retained her parental rights.

Judge Stabile authored a dissenting opinion, joined by Judge Shogan and then-Judge, now-Justice, Donohue, in which he disagreed with the principle that a mother could use her father as an "adoptive resource" in order to involuntarily terminate a father's parental rights. M.R.D., 128 A.3d at 1266 (Stabile, J., dissenting). Specifically, Judge Stabile explained that, because Mother sought to terminate Father's parental rights, Section 2512 of the Adoption Act requires the termination petition to identify "a

qualified person willing and able to adopt the Children." Id. at 1266-67. Judge Stabile further emphasized that Section 2903 permits the petitioning parent to retain his or her parental rights only in situations where a stepparent is the adopting party, and it "does not apply to individuals whose relationship with the petitioning parent is not a legally recognized marriage." Id. at 1267. Thus, given that Grandfather is not Mother's spouse, Judge Stabile concluded that Grandfather is not a qualified adoptive resource, rendering Mother's termination petition facially invalid.

While the majority concluded that Mother and Grandfather established cause under Section 2901 to permit the adoption despite the fact that Grandfather is not Mother's spouse, Judge Stabile noted that the majority based its decision on J.M., which he found to be factually distinguishable and inapplicable to the situation at hand. Judge Stabile observed that, in that case, the Superior Court merely considered the threshold question of whether a petitioning parent was permitted to show cause to waive the Adoption Act's relinquishment requirement where the grandfather sought to adopt his grandchild and co-parent with his daughter, but that it did not consider, let alone hold, that the mother had demonstrated cause to proceed with the adoption under the circumstances of that case. Thus, Judge Stabile reasoned that the majority's reliance on J.M. to support its conclusion that cause existed for Grandfather's adoption of Children was misplaced. Further, Judge Stabile opined that, to the extent that J.M. could be construed as supporting such a conclusion, the case was wrongly decided, as, in reaching its holding, it relied upon R.B.F., which allowed petitioners to demonstrate cause to permit an adoption by the parent's same-sex partner while permitting the parent to retain his parental rights — a different situation than that involved in J.M.

Additionally, Judge Stabile disagreed that the proposed adoption would create a new parent-child relationship and a new family unit warranting the termination of

Father's parental rights, as Grandfather remained married to Grandmother, lived in a separate residence with her, did not plan to cohabitate with Mother, and, unlike in cases involving stepparent or same-sex partner adoptions, is related to Children and already part of their family. Judge Stabile cautioned that such an arrangement would potentially "create unintended and undesirable consequences that do not promote a new family unit," including legal and social confusion over family members' new hybrid roles — i.e., Grandmother becoming a stepparent and Mother becoming a stepsister — and additional complications if Mother ever sought to marry. Id. at 1271.

Following the Superior Court's decision, Father filed a petition for allowance of appeal with this Court. We granted allocatur to consider whether Mother established cause under Section 2901 of the Adoption Act to proceed with the proposed adoption by Grandfather. See In re: Adoption of M.R.D. and T.M.D., 133 A.3d 293 (Pa. 2016) (order).

Before us, Father argues that the lower courts erred in finding that Mother established cause under Section 2901 to proceed with the anticipated adoption of Children by Grandfather despite the fact that Mother did not relinquish her parental rights. Specifically, Father emphasizes that the purpose of permitting the involuntary termination of a parent's rights in the context of an adoption is to "protect the integrity and stability of the new family unit," Appellant's Brief at 10, which he maintains would not be achieved by the proposed adoption in the instant case because Grandfather would not be living with Mother and Children, and, thus, no new parent-child relationship or family unit would be created.

While Father concedes that the Superior Court opined in J.M. that cohabitation is not the *sine qua non* of a new family unit, he notes, consistent with the dissent below, that the Superior Court in that case held only that mother and grandfather were

permitted to show cause under Section 2901, but that it remanded to the orphans' court to make the ultimate determination as to whether cause was shown. Father suggests that, rather than relying upon J.M., the Superior Court should have instead considered L.J.B. (remanding for hearing regarding stepmother's intention to adopt where stepmother and the child's father were separated) and Adoption of J.D.S., 763 A.2d 867 (Pa. Super. 2000) (holding that proposed adoption by stepparent who was separated from the child's mother was not valid, and that, as a result, termination of the father's parental rights was inappropriate), when interpreting the term "family unit," as, according to Father, both of those cases demonstrate that cohabitation is essential to forming a family unit and, thus, an adoption is not permitted where the parties will not be living together as an intact family. Father claims that it would be absurd to disallow a stepparent who no longer lives with the child's parent from adopting, as the Superior Court held in J.D.S., but to permit a non-spouse grandparent who has not resided with Children in 10 years to adopt.

As further support for his position, Father points to cases involving the standing of a grandparent to file for custody of their grandchildren, noting that, in D.G. v. D.B., 91 A.3d 706 (Pa. Super. 2014), the Superior Court held that a grandmother who exercised custody of her grandchild every other weekend and one night per week, but who had not lived with her grandchild in over four years, was not *in loco parentis* to the child and, thus, lacked standing to seek custody. Compare Argenio v. Fenton, 703 A.2d 1042 (Pa. Super. 1997) (holding that a grandmother who frequently babysat her granddaughter was not *in loco parentis* and, thus, lacked standing to seek custody of her granddaughter); with T.B. v. L.R.M., 786 A.2d 913 (Pa. 2001) (holding that domestic partner who assumed a parental status over her partner's child and performed parental duties with the partner's permission stood *in loco parentis* to the child and had standing

to seek partial custody and visitation). Relying on those cases, Father asserts that cohabitation is an important factor in obtaining standing in child custody actions, and he suggests that it would be illogical to require cohabitation for a grandparent to obtain *in loco parentis* standing in a child custody action, but not to require cohabitation in cases where a grandparent seeks to adopt his grandchild while terminating the parental rights of a biological parent.

Father stresses that, contrary to the majority's opinion below, his position on requiring parental cohabitation for an adoption does not ignore evolving social norms with respect to the construct of a family unit, particularly considering the fact that he does not argue that a marriage is required for an adoption. However, Father maintains that legal parameters regarding what constitutes an intact family unit are necessary in the context of involuntary terminations and adoptions because, otherwise, Section 2901's cause provision would be rendered meaningless, and the "floodgates" would open, allowing for "any ready third party" to "simply volunteer to be the new parent" in order to oust the unwanted parent from a child's life. Appellant's Brief, at 16. Father opines that such a situation is precisely what occurred in the instant case, claiming that Mother's characterization of Grandfather's role as "parental" was exaggerated in order to facilitate the termination of Father's parental rights and that, in reality, Grandfather acted as a "typical grandparent," providing extra assistance with Children because caring for twins was more difficult than caring for one child. Appellant's Brief at 20.

Father also disagrees with the lower courts' determination that adoption of Children by Grandfather would be in Children's best interests. Specifically, Father highlights that Grandfather would not have pursued adoption had it not been for Father's decision to file for custody of Children, and he argues that permitting the adoption will prevent Children from inheriting from Father or any of his family.

Additionally, Father contends that the proposed adoption will create mixed family roles, such as the fact that Children's legal father would also be their Mother's father, and will create the appearance of an incestuous relationship between Mother and Grandfather, as the relationship between parents is typically intimate. Father submits that these unique family dynamics could cause stigma and confusion and have long-term adverse impacts on Children. Thus, based on the foregoing, Father asserts that the Superior Court's decision should be reversed and that the order terminating his parental rights should be vacated.

In response, Mother and Grandfather emphasize that Section 2312 of the Adoption Code provides that "[a]ny individual may become an adopting parent," and that the Adoption Code contains no cohabitation requirement. Appellees' Brief at 8. Thus, Mother and Grandfather dismiss Father's argument as merely an attempt to "'engraft' a cohabitation requirement where none exists." Appellees' Brief at 15. Contrary to Father's position, Mother and Grandfather maintain that they have an existing "intact family unit" with Children regardless of the fact that Grandfather does not reside with Mother and Children, and they argue that terminating Father's parental rights and permitting Grandfather to adopt Children would promote the stability of their family unit, consistent with the underlying purpose of allowing for the termination of a biological parent's rights and an adoption. Appellees' Brief at 18. Mother and Grandfather suggest that it is "far better" to permit an adoption by a loving family member "than to permit a stranger from South Dakota, who purposely absented himself from his children's lives for eight years, to turn this family upside down." Appellees' Brief at 20. Moreover, although Father raised concerns that permitting another family member to adopt a child while a biological parent retains her parental rights would allow families to use adoption as a tool to essentially force out the other parent, Mother and Grandfather

posit that orphans' courts are well equipped to assess the unique facts of each case and determine whether a proposed adoption is a sham.

Mother and Grandfather further argue that imposing "parameters" on what constitutes an intact family unit ignores the realities of modern day America, as many Americans today are plagued by financial difficulties and forced to adapt by living with various relatives who are financially positioned to help them. Thus, Mother and Grandfather submit that what constitutes a family unit in today's times largely depends on the creativity and financial resources of a variety of individuals. Here, consistent with that notion, Mother and Grandfather allege that Father's inaction forced Grandfather to "step up to the plate" and perform Father's parental duties, thus creating a family unit and establishing "[f]ar more than good cause" to permit the adoption under Section 2901. Appellees' Brief at 20, 23.

Turning to the issue of whether the proposed adoption by Grandfather is in Children's best interests, Mother and Grandfather offer that the orphans' court specifically found that the adoption was legitimate and in Children's best interests, and that the court's findings in this regard were supported by competent evidence. Thus, Mother and Grandfather argue that, by likening Grandfather's relationship with Children to that of a typical grandfather, Father essentially is asking this Court to act as a "super fact finder" and reevaluate the evidence, contrary to the established standard of review for termination and adoption cases. Appellees' Brief at 25. In any event, Mother and Grandfather contend that the termination of Father's parental rights and the proposed adoption by Grandfather is indeed in Children's best interests, as "[n]o reasonable parent would think that it was in the best interests of their children to permit an individual with nothing in common with her children other than DNA to re-enter their family after having abandoned it for eight years." Appellees' Brief at 26. Additionally, to the extent

that Father claims that the proposed adoption would cause Children to suffer from stigma and create difficulties for Mother if she decides to marry in the future, Mother and Grandfather dismiss Father's arguments as mere conjecture.

Lastly, with respect to Father's comparison of this case to child custody cases involving *in loco parentis* standing, Mother and Grandfather maintain that Father failed to raise this claim below, rendering it waived. Regardless, Mother and Grandfather posit that the custody statute is distinguishable from the Adoption Code because the custody statute specifically limits the individuals who have standing to pursue a custody action, whereas the Adoption Code expressly permits "any individual" to adopt. 23 Pa.C.S. § 2312.

With these arguments in mind, we now focus our analysis on the issues before us. Although this case concerns the involuntary termination of parental rights, our grant of review does not involve an assessment of the sufficiency of the evidence for termination, but, rather, is a pure question of law — the preliminary question of whether a legal parent may establish cause under Section 2901 to excuse the relinquishment requirement and proceed with a proposed adoption by a grandparent. See In re Adoption of S.E.G., 901 A.2d 1017, 1018 (Pa. 2006). Accordingly, our standard of review is *de novo* and our scope of review is plenary. Id. at 1018 n.1.

In this case, there is little question that Mother and Grandfather have established by clear and convincing evidence that Father evidenced a settled purpose of relinquishing his parental claim to Children and that he failed to perform his parental duties, as neither party disputes that Father has had no contact with Children in eight years, well beyond the six-month period required under Section 2511(a). However, as we explained, supra, because it is Mother who is seeking to terminate Father's parental rights, rather than an agency, under existing Pennsylvania law, Mother must

demonstrate that an adoption of Children is contemplated in order for the termination petition to be cognizable. See 23 Pa.C.S. § 2512(b). While Mother attempts to meet this statutory requirement by offering Grandfather as the prospective adoptive father, the Adoption Act, as a general rule, requires that she relinquish her parental rights in order for the prospective adoption by Grandfather to be valid. See id. § 2711(d)(1).

If Mother had desired to relinquish her rights to Children, and assuming *arguendo* that an adoption by Grandfather and the termination of Father's parental rights were in Children's best interests, Grandfather would be permitted to adopt Children, and termination of Father's parental rights would have been proper, ending our inquiry. However, Mother wishes for Grandfather to adopt Children while she retains her parental rights, a scenario which is contrary to Section 2711(d)(1) and is not otherwise permitted in the Adoption Act. Indeed, while the Adoption Act allows a parent to retain his or her rights in cases where a stepparent petitions to adopt his or her child, id. § 2903, the Act contains no other provision authorizing a biological parent who consents to an adoption to retain his or her parental rights. Thus, recognizing this impediment to the proposed adoption and, ultimately, to their termination petition, Mother and Grandfather seek to waive the general rule of relinquishment pursuant to Section 2901.

As noted above, we held in R.B.F. that, in cases in which a party seeking adoption is unable to meet the statutory requirements under the Adoption Act, Section 2901 allows the party to show "cause" as to why he or she cannot meet those requirements, and, upon such a showing, the trial court has the discretion to waive the requirement and grant the adoption petition. R.B.F., 803 A.2d at 1201-02. In those consolidated cases, same-sex couples sought a second-parent adoption of the legal parent's child without the legal parent having to relinquish his or her parental rights. Finding that it was, indeed, possible for parties to waive the relinquishment requirement

under Section 2901 upon a showing of cause, we remanded to the respective trial courts to determine whether the couples showed cause to waive the requirement under the particular circumstances of their cases. Id. at 1203.

Similar to the appellants in R.B.F., Mother and Grandfather also seek to waive the Adoption Act's relinquishment requirement, albeit under a different factual scenario. Indeed, unlike in R.B.F., which did not involve involuntary termination due to the absence of a second legal parent, there obviously is no intimate relationship between the legal parent (Mother) and the prospective adoptive parent (Grandfather). Rather, Mother and Grandfather, who share a parent-child relationship of their own, seek to waive the relinquishment requirement in order to allow Grandfather to adopt Children and co-parent them with Mother, thereby facilitating the termination of Father's parental rights. Thus, we consider for the first time whether a parent and a grandparent — and, more specifically, Mother and Grandfather — may establish cause under Section 2901 to waive the requirement that the parent relinquish her parental rights when the grandparent seeks to adopt that parent's children — his grandchildren.

We explained in R.B.F. that a party could show cause by clear and convincing evidence if he or she demonstrated that "the purpose of Section 2711(d)'s relinquishment of parental rights requirement will be otherwise fulfilled or is unnecessary under the particular circumstances of [his or her] case." Id.[2] The purpose behind the

---

[2] While Justice Baer contends in his Concurring Opinion that we have placed "undue emphasis" on R.B.F., we note that both parties to this appeal have specifically agreed that R.B.F. governs this case. Furthermore, although Justice Baer suggests that this Court's holding in R.B.F was limited to adoption petitions filed by same-sex partners "at a time when they could not marry," Concurring Opinion (Baer, J.) at 4, our decision in that case contains no such limitations. First, that the same-sex partners in that case could not then marry was not relevant to our decision other than in noting that the spousal exception obviously did not apply to them. See R.B.F., 803 A.2d at 1202 ("There is no language in the Adoption Act precluding two unmarried same-sex partners (or unmarried heterosexual partners) from adopting a child who had no legal parents."). (continued…)

termination or relinquishment of an existing parent's rights prior to an adoption is to facilitate a "new parent-child relationship" between the child and the adoptive parent, B.E., 377 A.2d at 156 ("Termination of parental rights permits the child and the adoptive parent or parents to establish a new parent-child relationship through adoption"), and to protect "the integrity and stability of the new family unit." J.D.S., 763 A.2d at 871; L.J.B., 18 A.3d at 1108. Accordingly, Mother and Grandfather may show cause to waive the relinquishment requirement only if they can establish that permitting Grandfather to adopt Children while Mother retains her parental rights will promote a new family unit or that it is otherwise unnecessary to require Mother to relinquish her parental rights under the circumstances of this case.

Here, Mother and Grandfather claim that the relinquishment requirement should be waived and that Grandfather should be permitted to adopt Children so as to protect their "intact family unit" and provide stability in Children's lives. Appellees' Brief at 18. We must disagree.

In the standard adoption case, termination and relinquishment of parental rights is necessary so that the child may be adopted by, and form new bonds with, his or her new family, unencumbered by the former legal parents. By contrast, in second-parent adoption cases in which the relinquishment of a parent's rights is not required — i.e., stepparent adoptions and adoptions by same-sex couples — relinquishment of the parent's rights is unnecessary, and indeed damaging. In such cases, the parent and

_____

(…continued)

Moreover, in R.B.F., we stated in broad terms that "there is no reasonable construction of the Section 2901 'cause shown' language other than to conclude that it permits a petitioner to demonstrate why, in a particular case, he or she cannot meet the statutory requirements." Id. at 1201-02. Thus, until the instant case, we have not limited the type of petitioners who may show cause to excuse the relinquishment requirement under Section 2901.

the prospective adoptive parent are committed partners — that is, they are involved in a horizontal relationship, are equals as between each other, and are equals with respect to the child. Adoption in such circumstances allows the prospective adoptive parent to create a new parent-child relationship with the legal parent's child and a family unit *together with* the co-parent to whom he or she is committed. Thus, because the legal parent and prospective parent in second-parent adoption cases are part of the same family unit, the relinquishment requirement undermines, rather than promotes, family stability.

The same cannot be said for the instant case, however, because Mother and Grandfather are not similarly part of an intact family unit. Indeed, rather than being involved in a committed, horizontal relationship such as stepparents or same-sex partners, Mother and Grandfather share a vertical, parent-child relationship. Moreover, in this case, Grandfather will remain married to Grandmother and will continue to live in a separate residence with her after the adoption. Adoption does not foster a family unit under circumstances where, as here, the adopting party is already part of — and will continue to be part of — a family unit that is separate from the unit which he seeks to promote and join through adoption.

Additionally, relinquishment is necessary in this case to avoid a host of unique complications. For example, such an arrangement would create confusing hybrid relationships within the family — Grandfather would be both Children's father and grandfather, Grandmother would be both a grandmother and a stepmother, and, more confusing still, because of Grandmother's status as a stepmother, Mother would be both a mother to Children and, technically, their stepsister. Further complicating matters, if Mother ever seeks to marry, the Act does not require Grandfather to terminate his parental rights in favor of Mother's spouse; thus, he could decide to remain Children's

father and prevent Mother's spouse from having legal rights over Children. Grandfather has neither considered, nor explained, how his role with Children might change if Mother married. N.T., 8/13/13, at 23-26.[3]

Lastly, although the orphans' court rejected the possibility in the instant case, permitting Grandfather to adopt and co-parent Children with mother would nevertheless open the door for misuse of adoption proceedings by spiteful parents as a means to involuntarily terminate the rights of unwanted parents, potentially allowing grandparents, cousins, pastors, coaches, and a litany of other individuals who have a close relationship with a child to stand in as prospective adoptive parents so that termination may be achieved. Given that the "complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take," In re Bowman, 666 A.2d 274, 280 (Pa. 1995), we must ensure that we do not open the floodgates to such gamesmanship.

We are mindful that, in today's times, societal norms pertaining to what constitutes a family are constantly evolving. Moreover, we commend Grandfather for stepping up to provide for Children over the past 10 years and for his willingness to do so in the future. Indeed, there are undoubtedly other individuals in similar situations who wish to assist single parents with the difficult task of raising their children.

---

[3] Moreover, although there is absolutely no issue of incest in this case, as the New Jersey Superior Court noted under similar circumstances, allowing a grandparent to adopt his or her child's children and co-parent them with his or her child raises the possible societal perception of an incestuous relationship between the grandparent and his child, a relationship which is both a criminal offense and which carries a social stigma. See In re Adoption of Child by Nathan S., 934 A.2d 64, 68 (N.J. Super. Ct. Ch. Div. 2006) (warning that "it might appear that the Court created an incestuous relationship if it allowed a grandparent to co-parent his biological grandchild with his daughter"); see also 18 Pa.C.S. § 4302 (criminalizing incest); 23 Pa.C.S. § 1304(e) (prohibiting marriage between relatives, including between a parent and child).

Nevertheless, parties seeking adoption must strictly comply with the existing provisions of the Adoption Act. Here, Mother and Grandfather have not met their burden of showing that the proposed adoption by Grandfather would serve the underlying purposes of relinquishment, or that relinquishment is otherwise unnecessary under the circumstances of this case. See R.B.F. In other words, they have not demonstrated that the proposed co-parenting arrangement would create a new family unit or a new parent-child relationship, particularly, and significantly, given Grandfather's existing parent-child relationship with Mother, his existing marriage to Grandmother, and his intention to continue living in a separate residence with Grandmother following the adoption. Thus, while Grandfather's efforts in assisting Mother with Children are certainly laudable, and while Grandfather is in no way precluded from enjoying partial custody of Children, Grandfather's pre-existing and continuing close relationship with Children does not establish legal cause to excuse the requirement that Mother relinquish her parental rights under Section 2711 prior to the adoption.[4] As such, the adoption proposed herein may not proceed. As the proposed adoption is not otherwise valid, we need not consider whether the adoption would have been in Children's best interests.

In sum, Mother and Grandfather have not demonstrated that, under Pennsylvania law, a valid adoption of Children is anticipated; thus, their termination petition is not cognizable, and so they are precluded from seeking the involuntary termination of Father's parental rights. Accordingly, we reverse the order of the Superior Court and remand to the orphans' court for proceedings consistent with this opinion.

---

[4] We note that our decision does not preclude a grandparent from seeking to adopt a grandchild in cases where the child's parent relinquishes his or her parental rights.

Jurisdiction relinquished.

Justice Donohue did not participate in the consideration or decision of this matter.

Chief Justice Saylor and Justices Dougherty and Wecht join the opinion.

Justice Baer files a concurring opinion.

Justice Todd files a special concurring opinion.

Justice Wecht files a concurring opinion.