[J-16-2016] [MO: Wecht, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 23 MAP 2015 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court dated July 24, 2014, |
| | : | Reconsideration Denied September 3, |
| v. | : | 2014, at No. 2086 MDA 2013, |
| | : | Reversing the Judgment of Sentence of |
| | : | the Cumberland County Court of |
| JAMES ARTHUR BALL, III, | : | Common Pleas, Criminal Division, dated |
| | : | October 22, 2013, at No. CP-21-SA- |
| Appellee | : | 0000133-2013. |
| | : | |
| | : | ARGUED: November 17, 2015 |
| | | |
| | : | REARGUED: May 10, 2016 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                    **DECIDED: September 28, 2016**

Our decision today establishes that the court of common pleas, reviewing a case *de novo* following a defendant's appeal from a summary conviction before a magisterial district judge ("MDJ"), is prohibited by the double jeopardy clauses of the United States and Pennsylvania Constitutions from re-trying the defendant on charges for which he was acquitted by the MDJ.

Although I authored today's Majority Opinion, I write separately here to offer brief response to some concerns voiced by the learned dissent. Because the dissent's

concerns pertain to the effect our decision will have upon MDJ's, I have chosen to address those concerns by way of this special concurrence.[1]

The dissent's thoughtful protestations notwithstanding, our holding today does nothing to alter the task of MDJs throughout the Commonwealth. MDJs dispense justice throughout Pennsylvania on a daily basis, and their deep experience on the bench and in their communities informs their rulings, including decisions to afford or withhold judicial leniency as the needs of justice require. Our opinion does nothing to strip them of that tool. I disagree respectfully with the dissent's attempt to "caution" MDJs against giving "breaks." See Dissenting Op. at 8. These judicial officers are better-positioned than us to weigh and measure justice and the appropriateness of its particular demands in individual cases.

The dissent asserts that defendants who are convicted of a lesser included offense will take advantage of the "break" by appealing their conviction to the court of common pleas and will then gain some purported "windfall" afforded by the double jeopardy prohibition. Id. Presumably, the dissent fears that defendants will be able to evade responsibility if they cannot be retried on charges for which they were acquitted by the MDJ. The dissent's quarrel, then, is with our Constitutions.

The flaw in the dissent's reasoning is evident: it simply presumes that all defendants who appear before a MDJ are guilty. In the dissent's view, any lesser convictions by the MDJ are deemed judicial gifts or gratuities. This view obscures the

---

[1] See In re Adoption of M.R.D., 26 MAP 2016, 2016 WL 4541129 (Pa. 2016) (Todd, J., specially concurring) ("As members of this Court have previously noted, special concurrences are 'somewhat unusual, but not without precedent'") (quoting Commonwealth v. King, 57 A.3d 607, 633 n.1 (Pa. 2012) (Saylor, J., specially concurring)).

fact that there is a presumption of innocence in our justice system. When a defendant appears before a MDJ and maintains his innocence, or merely elects to stand on the protection provided by our Constitutions and defend himself, and the MDJ then convicts him of a lesser charge nonetheless, the defendant has not received a "break." He has received a conviction.

This is particularly true where, as here, the defendant did not ask for any "break." Under the dissent's approach, the defendant would be forced to choose either to accept guilt for something he claims he has not done, or risk being put twice in jeopardy for an offense of which he has been acquitted. While the dissent may imagine this to be a "meaningful choice," id. at 6, our Constitutions beg to differ. The precedents surveyed in today's majority opinion make surpassingly clear that American law does not countenance such a dilemma. Indeed, it would be entirely foreign to our jurisprudence.

Rather than forcing defendants to choose between which constitutional right to waive, our decision today vindicates, as it must, all of a defendant's rights, including the rights to be presumed innocent until proven guilty beyond a reasonable doubt, the right to a fair trial, the right to have a conviction reviewed in a court of record, and, of course, the right to be free from double jeopardy. These rights represent no "windfall," no beneficence from government. They represent preexisting inherent rights that Americans enjoy, and that our Constitutions obligate us to protect.