J-S48030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF K.M.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.T.R., JR. | No. 287 WDA 2016 |

Appeal from the Order Entered January 19, 2016,
in the Court of Common Pleas of Fayette County,
Orphans' Court at No(s): 18 Adopt-2015.

BEFORE: BOWES, DUBOW, and MUSMANNO, JJ.

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 20, 2016**

Appellant, M.T.R, Jr. ("Father") appeals from the Order involuntarily terminating his parental rights to three-year-old K.M.R. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b).[1] In light of the recent Supreme Court decision in *In Re: Adoption of M.R.D. and T.M.D*, \_\_\_ A.3d \_\_\_, 2016 WL 4541129 (Pa. 2016), we are constrained to reverse the trial court's Order terminating Father's parental rights.

The facts of this case are as follows. In May 2013, K.D.W. ("Mother") gave birth to Child. Mother and Father were never married and except for a

_____

[1] On August 2, 2016, we issued a Memorandum Opinion affirming the trial court. On August 29, 2016, however, the Supreme Court issued its decision *In Re: Adoption of M.R.D. and T.M.D.*, \_\_\_ A.3d \_\_\_, 2016 WL 4541129, (Pa. 2016), which is directly on point with the facts of this case. On August 31, 2016, we *sua sponte* issued an Order withdrawing our Memorandum Opinion and reconsidering our decision.

short period following Child's birth, Mother and Father have never lived together. Rather, Mother and Child live with Mother's father, T.D.W. ("Maternal Grandfather"), his wife, and Mother's two younger sisters.

Mother testified that her relationship with Father was unstable. She initially permitted Father to visit Child at her family's home and tried to involve Father in Child's life, but she stopped doing this after Father forcefully tried to remove Child from her care twice.

Child was seven months old in December 2013 when Father began to make less of an effort to see Child. Father's contact with Child became increasingly sporadic and infrequent. When Father visited Child, he continued to abuse drugs and even nodded off while holding Child. When Father decided to visit, he would frequently appear at Mother's home after Child had fallen asleep. More importantly, Father never cared for Child. Father never bathed Child, never changed a diaper, and never woke up in the middle of the night to care for Child.

Father's last visit with Child occurred during Child's first birthday party in May 2014. Shortly thereafter, Father voluntarily committed himself to drug rehabilitation in Florida in order to treat his heroin addiction, and subsequently returned for treatment in December 2014 and January 2015.

Father admitted that even though the rehabilitation facilities permitted him to write letters and make some telephone calls, he did not attempt to contact Child during those times. He also admitted that he failed to contact Mother to find out about Child even though she resided at the same address

and Father possessed phone numbers for Mother and her family. Aside from sporadic Facebook messages and one attempt to have his own father deliver money to Child in a Christmas card in 2014, Father did not attempt to maintain contact with Child.

On May 7, 2015, approximately twelve months after Father's last contact with Child, Mother filed a Petition for the Involuntary Termination of Parental Rights ("TPR Petition") as to Father pursuant to 23 Pa.C.S. § 2511(a)(1).

On September 23, 2015, the Orphans' Court held an evidentiary hearing on the TPR Petition. Mother testified and presented the testimony of Maternal Grandfather, who has been involved in Child's life, and wants to adopt Child. Father testified on his own behalf and presented the testimony of Paternal Grandfather.

By decree entered January 19, 2016, the Orphans' Court granted the TPR Petition based upon Sections 2511(a)(1) and 2511(b). This timely appeal by Father follows.

## ISSUES ON APPEAL

Father raises the following issues on appeal:

1. Did the [Orphans'] Court err in terminating [Father's] parental rights when the proposed adoptive parent is [Child's Maternal Grandfather].

2. Did the [Orphans'] Court err in terminating [Father's] parental rights when [Mother] failed to prove by clear and convincing evidence that her grounds for seeking the termination of parental rights were valid.

Father's Brief at 1.

## LEGAL ARGUMENT

We will address Father's first issue because that issue disposes of this appeal. Father avers that the Orphans' Court erred in terminating Father's parental rights because it is the Child's Maternal Grandfather who is the adoptive resource.  Father's Brief at 1.  In light of the recent Supreme Court decision in **_In Re: Adoption of M.R.D., supra_**, we are constrained to agree that the trial court erroneously granted the TPR petition.

The Supreme Court in **_In Re: Adoption of M.R.D., supra_**, addressed the statutory scheme for adoptions in which it is a parent, instead of a child welfare agency, that files a petition to terminate parental rights of the other parent. In such cases, the parent who has filed the TPR Petition must establish not only the requirements set forth in 23 Pa.C.S. § 2511, but also that the prospective adoptive parent is authorized to adopt pursuant to the Adoption Act. 23 Pa.C.S. § 2512(b); **_In Re: Adoption of M.R.D., supra_** at *3.

The Adoption Act explicitly authorizes only a stepparent to be the adoptive resource when it is a biological parent who is filing a TPR petition against the other biological parent.  **_See_** 23 Pa.C.S. § 2903.  If, however, the adoptive resource is someone other than a stepparent, the Adoption Act requires the biological parent who is filing the TPR petition to relinquish his parental rights.  23 Pa.C.S. § 2711(a)(3); **_In Re: Adoption of M.R.D.,_** **_supra_** at *3_.

Applying this interpretation of the Adoption Act to the facts in **In Re: Adoption of M.R.D.**, **supra**, the Supreme Court concluded that "while the Adoption Act allows a parent to retain his or her rights in cases where a stepparent petitions to adopt his or her child, the Act contains no other provision authorizing a biological parent who consents to an adoption to retain his or her parental rights." **Id**. at *10 (internal citation omitted).

The Supreme Court continued its analysis by considering whether the trial court could waive the relinquishment provision under Section 2901. Section 2901 permits the trial court to waive requirements set forth in the Adoption Act for "cause shown[.]" 23 Pa. C.S. § 2901; **In Re: Adoption of M.R.D.**, **supra** at *10.

The Supreme Court concluded that it was only proper for the trial court to waive the requirement of relinquishment in cases in which "the parent and the prospective adoptive parent are committed partners—that is, they are involved in a horizontal relationship, are equals as between each other, and are equals with respect to the child." **Id**. at *11. The Supreme Court, however, refused to interpret the "cause shown" provision to allow the trial court to waive the relinquishment requirement where the adoptive resource is a grandparent because "[a]doption does not foster a family unit under circumstances where, as here, the adopting party is already part of—and will

- 5 -

continue to be part of—a family unit that is separate from the unit which he seeks to promote and join through adoption."[2]  ***Id***.

In this case, it is the Maternal Grandfather, and not a stepparent, who is the prospective adoptive resource, and Mother is not willing to relinquish her parental rights.  Since the Adoption Act does not permit the Maternal Grandfather to be a prospective adoptive resource unless Mother relinquishes her parental rights, the Adoption Act does not permit the Maternal Grandfather to be an adoptive resource.

Moreover, because Mother and Maternal Grandfather are in a "vertical, parent-child relationship[,]" instead of a "horizontal relationship" the adoption would not "foster a family unit" and thus, the trial court may not find "cause shown" to waive the relinquishment requirement of the Adoption Act.  ***Id.*** at *11.

Therefore, we are constrained to reverse the trial court's grant of the TPR petition based on its finding that the Maternal Grandfather was an authorized adoptive resource.

_____

[2] We highlight Justice Todd's special concurrence in this case in which she observes that the concept of "family" has evolved over the past 35 years since the legislature imposed the requirement that the adoptive resource must be a spouse or partner of the biological parent. We share this view, as well as her request that "the legislature, with continued focus on the best interests of our Commonwealth's children, [ ] revisit the adoption and relinquishment requirements for termination of parental rights under the Act." ***Id***. at *16 (Todd, J., concurring).

In light of our ruling on the first issue, we do not need to address Father's remaining issue.

Order reversed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2016