J-A10011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3577 EDA 2018 |

Appeal from the Order Entered November 5, 2018
In the Court of Common Pleas of Monroe County Orphans' Court at
No(s): 64 O.C.A. 2018

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3624 EDA 2018 |

Appeal from the Order Entered November 5, 2018
In the Court of Common Pleas of Monroe County Orphans' Court at
No(s): 65 O.C.A. 2018

BEFORE: GANTMAN, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM PER CURIAM:                    **FILED AUGUST 12, 2019**

M.E. (Mother) appeals[1] from the orders, entered in the Court of Common

Pleas of Monroe County, denying her petitions to involuntarily terminate

Father's parental rights to the parties' minor children, J.R.E. (born (1/2009)

_____

[1] On January 14, 2019, our court *sua sponte* consolidated these appeals. **See**
Pa.R.A.P. 513.

and Z.E. (born 3/2012) (collectively, Children). After careful review, we reverse and remand for further proceedings.[2]

Mother was raped by Father on a daily basis for nearly twenty years, beginning when she was just a four-year-old child. The sexual abuse started in Wayne County, Michigan, where Father lived with Mother, Mother's mother, and Mother's siblings. The abuse continued when Mother moved with Father and her two younger siblings to Wayne and Lackawanna Counties in Pennsylvania. Mother learned that Father was not her biological father, but her adoptive father, when she was eighteen years old.[3] Mother moved to Antrim County, Michigan, with Father and Mother's brother, after Mother graduated from high school. In Michigan, Father held Mother out to be his wife, publically claiming that they were married.

As a result of Father's continued abuse, Mother bore Children in 2009 and 2012.[4] When J.R.E., the parties' daughter, turned four years old, Mother

_____

[2] Neither Father nor Children's Guardian *ad litem* has filed a brief in this appeal. Attorneys for the Barbara J. Hart Justice Center, a project of the Women's Resource Center, have joined in Mother's appellate brief.

[3] Mother testified that when she became pregnant with J.R.E. and feared that the child could suffer deformities as the product of incest, Father told Mother that he was not her biological father. Father adopted Mother after he married Mother's mother, who was pregnant with Mother at the time they were married. Mother avers that Father is listed on Mother's birth certificate as her biological father. Termination Petition, 8/18/18 at ¶ 8.

[4] Mother testified at the termination hearing that paternity tests were performed to prove that Father is Children's biological father. Termination Hearing, 10/29/18, at 24.

feared that Father would start sexually abusing J.R.E. as he had done to Mother. As a result, Mother reported Father's history of sexual abuse to Michigan authorities. Father was arrested in September 2013. In July 2014, Father entered guilty pleas in Michigan to two counts of criminal sexual conduct; he was sentenced to two 10-15 year terms of imprisonment on the sexual offenses.[5] Three months later, in October 2014, Father entered guilty pleas in Michigan to three counts of criminal sexual conduct with a person under thirteen years of age[6] and was sentenced to three concurrent sentences of 15-50 years' imprisonment. In July 2015, Father entered guilty pleas in Pennsylvania to nine separate counts of sexual crimes, including rape/forcible compulsion,[7] involuntary deviate sexual intercourse (IDSI) of a person less than 16 years old,[8] and aggravated indecent assault of a person less than 16 years old.[9] Father was sentenced to serve 44-128 years in prison on those

---

[5] **See** Mich.Comp.Laws § 750.520b(2). In an unrelated matter, Father also entered a guilty plea to conspiracy to commit insurance fraud, involving an arson at his home, at the same time of the sexual criminal conduct pleas. A Michigan judge sentenced him to 4-10 years of imprisonment on that charge.

[6] Mich.Comp.Laws § 750.520b(1)(a).

[7] 18 Pa.C.S. § 3121.

[8] 18 Pa.C.S. § 3123(a)(7) (IDSI where complainant less than 16 years of age and offender four or more years older than complainant and complainant and offender are not married to each other).

[9] 18 Pa.C.S. § 3125(a)(8) (aggravated indecent assault where complainant less than 16 years of age and offender four or more years older than complainant and complainant and offender are not married to each other).

charges. Father is required to register as a sexual offender in both Michigan and Pennsylvania. Father is currently incarcerated in Michigan and will be returned to Pennsylvania to serve his Pennsylvania sentence when he finishes serving his sentence in Michigan.

On August 18, 2018, Mother filed petitions to involuntarily terminate Father's parental rights to Children pursuant to 23 Pa.C.S. §§ 2511(a)(7), (a)(10) and (a)(11) of the Adoption Act. [10] [11] [12] In her petition Mother seeks

_____

[10] Under section 2511(a)(7), a parent's rights may be involuntarily terminated if "[t]he parent is the father of a child conceived as a result of a rape or incest." 23 Pa.C.S. § 2511(a)(7).

[11] Parental rights may be involuntarily terminated under section 2511(a)(11) where "[t]he parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country. 23 Pa.C.S. § 2511(a)(11).

As an aside, we note that Legislation is currently pending to amend section 2511(a)(9) to include rape, IDSI, sexual assault and aggravated indecent assault to the list of offenses for which a parent's rights could be involuntarily terminated if he or she has been convicted of one of those crimes. *See* 2019 Bill Text PA S.B. 120 (introduced Jan. 28, 2019). Notably, Father was convicted of three of these listed offenses in Pennsylvania.

[12] Under section 2511(a)(10), parental rights may be involuntarily terminated if:

> The parent has been found by a court of competent jurisdiction to have committed sexual abuse against the child **or another child of the parent** based on a judicial adjudication as set forth in paragraph (1)(i), (ii), (iii) or (iv) or (4) of the definition of "founded report" in section 6303(a) (relating to definitions) where the judicial adjudication is based on a finding of "sexual abuse or exploitation" as defined in section 6303(a).

- 4 -

"to protect herself and her young and vulnerable children from further exposure to a convicted child rapist;" she avers that she does not intend to place Children up for adoption, but plans to "continue to exercise full custody over her children until they reach the age of majority." Termination Petition, 8/18/18, at 1, ¶ 16. Mother contends that Father "is a statutorily unfit parent who is not entitled to any physical custody, legal custody, or visitation with his biological children." *Id.* at ¶ 45.[13] Since Father's incarceration, Mother has been the sole financial provider for Children and has had primary physical and primary legal custody of Children. Father has not seen or communicated with Children since his arrest in 2013.

After a termination hearing[14] held on October 29, 2018, the trial court denied Mother's termination petitions. Mother filed timely notices of appeal and court-ordered Pa.R.A.P. 1925(a)(2)(i) concise statements of errors

---

23 Pa.C.S. § 2511(a)(10) (emphasis added).

[13] Mother avers that because Father is her adoptive father, he is also her "legal" father and, thus, section 2511(a)(10) applies where she was the child victim of his criminal conduct (rape). *See* Termination Petition, 8/18/18, at ¶¶ 37-39. *See* n.12, *supra*; *see also* 23 Pa.C.S. § 5326 (any rights to seek legal or physical custody of child shall be automatically terminated upon adoption).

[14] Children were represented by guardian *ad litem*, Megan M. Reaser, Esquire, at the termination hearing. *See In Re: T.S.*, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

complained of on appeal. Mother presents the following issues for our consideration:

(1) Whether the trial court, by its [o]rders dated November 5, 2018, erred as a matter of law by denying the [p]etition[s] to [i]nvoluntarily [t]erminate [Father's p]arental [r]ights based on lack of a contemplated adoption, pursuant to the Pennsylvania Adoption Act[.]

(2) Whether the trial court, by its [o]rders dated November 5, 2018, erred as a matter of law by imposing the requirement of a contemplated adoption upon [Mother] and not finding, to the extent the [Adoption] Act required [Mother] to make such a showing, that such requirement violates [Mother's] right to due process under the Fourteenth Amendment of the United States Constitution[.]

(3) Whether the trial court, by its [o]rders dated November 5, 2018, erred as a matter of law by imposing the requirement of a contemplated adoption upon [Mother] and not finding, to the extent the [Adoption] Act required [Mother] to make such a showing, that such requirement violates [Mother]'s right to equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

(4) Whether the trial court, by its [o]rders dated November 5, 2018, erred as a matter of law by imposing the requirement of a contemplated adoption upon [Mother] and not finding, to the extent the [Adoption] Act required [Mother] to make such a showing, that such requirement violates [Mother]'s rights under the Pennsylvania Constitution, including without limitation [Mother]'s [civil] rights under Article I, § 26 thereof.

Appellant's Brief, at 2-3.

Mother first contends that the trial court erred in denying her petitions to involuntarily terminate Father's parental rights to Children when she established, by clear and convincing evidence, that termination is justified under 23 Pa.C.S. §§ 2511(a) and (b) and would be in Children's best

- 6 -

interests.[15]  She also argues that the trial court incorrectly determined that termination was improper where Mother did not aver in her termination petition that an adoption was contemplated pursuant to 23 Pa.C.S. § 2512(b).

The statutory authority to terminate parental rights is found in Subchapter B of Chapter 25 (Proceedings Prior to Petition to Adopt) in Pennsylvania's Adoption Act (Act). [16]  The Act is "Part III" of Title 23, our Commonwealth's Domestic Relations Code.[17]  The foreword to the original Act of 1970 recognized the need to "facilitate the placement for adoption of children who are considered 'unadoptable' under the existing law" and the "difficulty of the existing law[, Act of April 4, 1925, P.L. 127, to address] the technical impediments to an effective final termination of a parent-child relationship." *See* Appendix to the Legislative Journal, Proposed Adoption Act, 1970, at 182.

The grounds for involuntary termination of parental rights are set forth in section 2511 of the Act.  *See* 23 Pa.C.S. §§ 2511(a)(1)-(11), (b).  A party

---

[15]  In involuntary termination of parental rights cases, our review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  *Adoption of B.D.S.*, 431 A.2d 203, 207 (Pa. 1981).

[16] 23 Pa.C.S. §§ 2101-2938.

[17] The current version of "Part III" (Adoption Act) was re-reported as amended and finally approved by the governor on October 15, 1980.  This act, known as Act 163, "amend[ed] Title 23 (Domestic Relations) of the Pennsylvania Consolidated Statutes, [by] adding provisions relating to the termination of parental-child relationships and adoptions[,] revising certain provisions of the law relating thereto[,] and making repeals.  *See* H.B. 213 Bill Information History, Regular Session 1979-80.

petitioning for termination "must prove the statutory criteria for that termination by at least clear and convincing evidence." *In re T.R.*, 465 A.2d 642, 644 (Pa. 1983). Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Sylvester*, 555 A.2d 1202, 1203-1204 (Pa. 1989).

Section 2512 of the Act designates who may file an involuntary termination petition and sets forth the required contents of a petition. Section 2512 states, in relevant part:

> **(a) *Who may file.*** — A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:
>
> > **(1) Either parent when termination is sought with respect to the other parent.**
> >
> > **(2)** An agency.
> >
> > **(3)** The individual having custody [of] or standing *in loco parentis* to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).
> >
> > **(4)** An attorney representing a child or a guardian *ad litem* representing a child who has been adjudicated dependent under 42 Pa.C.S. § 6341(c) (relating to adjudication).
>
> **(b) *Contents.*** — The petition shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights. **The petition filed under this section shall also contain an averment that the petitioner will assume custody of the child until such time as the child is adopted.** If the petitioner is an agency it shall not be required to aver that

> an adoption is presently contemplated []or that a person with a present intention to adopt exists.[18]

23 Pa.C.S. § 2512(a), (b) (emphasis and italics added). In **In re M.R.D.**, our Supreme Court reaffirmed the fact that the parent petitioning for the involuntary termination of the other natural parent's parental rights under 2512(a) must accompany that request with an averment that adoption is intended. The Court stated:

> Section 2512(a) of the Adoption Act sets forth the parties who may file a petition for involuntary termination, including, *inter alia*, a parent or an agency. 23 Pa.C.S. § 2512(a). In contrast to an agency petition, a parent petitioning to terminate the rights of the child's other parent must file a termination petition containing an averment that the petitioner will assume custody of the child until such time as the child is adopted. [**Id.** at] § 2512(b). Thus, the petitioning parent must demonstrate that an adoption of the child is anticipated in order for the termination petition to be cognizable. **Section 2512(b)'s adoption requirement is consistent with the rationale behind permitting the involuntary termination of a parent's rights, which is to dispense with the need for parental consent to an adoption when, by choice or neglect, a parent has failed to meet the continuing needs of the child, rather than to punish an ineffective or negligent parent, or provide a means for changing the surname of the child.**

_____

[18] When an agency petitions to involuntarily terminate an individual's parental rights to his or her child, that child is presumably already in the care and custody of the agency, having been determined to be dependent. "[W]hen a child is in the custody of an approved adoption agency, it is not necessary that adoption be imminent before the agency may petition to have a parent's rights terminated[,] [n]or must a particular adoption plan be established before the agency's petition may be sustained . . . [because] [o]ne of the purposes of the Adoption Act of 1970 was to permit an agency to seek termination of parental rights independently of an adoption." **In re Burns**, 379 A.2d 535, 541 (Pa. 1977) (citation omitted). Thus, pursuant to section 2512(b), an agency need not aver in its petition to terminate that an adoption is presently contemplated or that a person with a present intention to adopt exists.

*Id.* at 1120 (emphasis added). ***See In re B.E.***, ***supra*** at 156 ("The purpose of the involuntary termination provisions of the Adoption Act is not to punish an ineffective or negligent parent, or provide a means for changing the surname of the child."); ***see also In re E.M.I***, 57 A.2d at 1285 (same). Thus, when a party does not include in his or her termination petition an averment that there is a corresponding plan for an anticipated adoption, our courts have held that the threshold requirement of section 2512 has not been met and the court will not consider the substantive merits of the petition under subsections 2511(a) and (b). ***See In re E.M.I.***, 57 A.3d 1278 (Pa. Super. 2012).

Here, Mother's petitions allege sections 2511(a)(7), (a)(10), (a)(11) as the grounds for terminating Father's parental rights; Mother petitioned the court pursuant to section 2512(a)(1), as a parent seeking to terminate the rights of the other parent. Mother, however, did not include in her petition "an aver[ment] that an adoption is presently contemplated [or] that a person with a present intention to adopt exits." 23 Pa.C.S. § 2512(b). The trial court found itself "constrained by the requirements of the Adoption Act and by prior appellate court decisions to deny [Mother's] petition for termination . . . [because] there is no[] 'contemplated adoption' to consider." Trial Court Opinion, 11/5/18, at 5.

Historically, our courts have recognized that the purpose of involuntary termination of parental rights is "to dispense with the need for parental consent to an adoption when, by choice or neglect, a parent has failed to meet the continuing needs of the child." ***In re Male Infant B.E.*** (***In re B.E.***), 377

A.2d 153, 155 (Pa. 1977).[19] Chapter 25 of the Act presupposes a petition for adoption by the individual or agency petitioning to terminate parental rights. Thus, "[a section 2512] termination petition filed by one parent against the other must occur in the context of an anticipated adoption." **In re Adoption of M.R.D.**, 145 A.3d 1117, 1120 (Pa. 2016); **In re E.M.I.**, **supra** (petition to terminate natural parent's rights filed by other natural parent under section 2512(a)(1) cognizable only if adoption of child foreseeable). Under such circumstances, termination "permits the child and the adoptive parent or parents to establish a new parent-child relationship." **In re B.E.**, 377 A.2d at 156. Therefore, a natural parent who petitions the court to terminate the rights of the other parent necessarily requires the petitioning parent also relinquish his or her parental rights in order to free his or her child for adoption. **In re Adoption of R.B.F.**, 803 A.2d 1195, 1199 (Pa. 2002); 23 Pa.C.S. § 2711(d)(1) (consents necessary to adoption). The only exception to this rule is if the petitioning parent's spouse intends to adopt the child. **See** 23 Pa.C.S. §2903 (spousal exception provision available only in private family adoptions, upon marriage or remarriage of biological father or mother; where

---

[19] Notably, **In re B.E.** was decided under 1 P.S. § 312 (repealed and replaced by 23 Pa.C.S. § 2512, effective Jan. 1, 1981). Like current section 2512, section 312 also "indicate[d] that a parent may bring a petition for termination of the parental rights of the other parent only when adoption is contemplated." **In re Adoption of L.B.J.**, 18 A.3d 1098, 1107 (Pa. 2011), citing **In re B.E.**, 377 A.2d at 155; **In re Burns**, 379 A.2d at 541. The comment to section 312 noted that the contemplated adoption language of that section "is intended to assure that some agency or person is responsible for the child pending his [or her] adoption." Appendix to the Legislative Journal, Proposed Adoption Act, 1970, Comment, at 185.

natural parent consents to adoption of child by natural parent's new spouse, natural parent retains parental rights to child).

Our Courts have repeatedly stated that to effectuate an adoption, which is a statutory right, parties must strictly comply with the provisions of the Act. ***In re Adoption of E.M.A.***, 409 A.2d 10, 11 (Pa. 1979); ***In re R.B.F.***, 803 A.2d at 1199. Thus, "where no new parent-child relationship is contemplated[, which is the 'singular concern' of the Adoption Act,] . . . the involuntary termination of . . . parental rights . . . is not permitted[.]" ***In re L.B.J***, 18 A.3d at 1108 (citation omitted); ***In re T.R.***, 465 A.2d 642, 644 n.10 (Pa. 1983).

Applying section 2512(b)'s contemplated adoption requirement to the unique facts of this case creates an absurd result where Mother, a capable and fit single parent[20] who has been the tragic victim of rape committed at Father's hand for decades, cannot remain Children's legal Mother and seek termination of Father's, her rapist's, parental rights. Children's guardian *ad litem* acknowledges that terminating Father's parental rights would be in Children's best interests. ***See*** N.T. Termination Hearing, 10/29/18, at 29 ("I do understand where Mom is coming from and it probably would be in [C]hildren's best interest not to have that tie [with Father] so that he doesn't have that ability to even try [to contact [C]hildren."). Moreover, the trial court

---

[20] Guardian *ad litem*, Megan Reaser, noted at the termination hearing that Children appear "happy" and "healthy." N.T. Termination Hearing, 10/29/18, at 28.

recognized that "[t]here are clearly grounds for [termination] under [s]ection 2511(a)(7), (a)(10), and (a)(11), as sought." *See* Trial Court Opinion, 11/5/18, at 5. It is doubtful that the legislature would have intended such a result where a fit parent seeks to ensure his or her family's safety and prevent them "from further exposure to a sexually violent predator." Appellant's Brief, at 3.[21] *See* 1 Pa.C.S. § 1922(1) (General Assembly does not intend a result

---

[21] We note that House Bill 1682, No. 2253, Session of 2017, was referred to the judiciary committee on July 24, 2017. Bill 1682 would remove the requirement that a parent of a child conceived by rape or incest would have to aver that an adoption is presently contemplated in order to terminate the parental rights of the other offending parent. The Bill, co-sponsored by Representative Michael H. Schlossberg, would add subsection (b)(2) to section 2512, stating "It shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists if any of the following apply: (i) the petitioner is an agency; (ii) the child was conceived as a result of rape or incest." House Bill 1682, No. 2253, Session of 2017, 7/24/17, at 1-2.

We also note that Senate Bill 354, No. 344, Session of 2019, has recently been referred to the judiciary committee. Bill 354 would add subsection (a.1) to 23 Pa.C.S. § 2511, which would impose "mandatory termination" of the rights of a parent where a petition has been filed alleging that the parent has been convicted of, among other things, rape, IDSI and aggravated assault in which the victim of the crimes was the child. In such cases, if those "grounds [are] determined . . . to have been proved and a determination is made by the court that the termination is in the best interests of the child," termination would occur. Senate Bill 354, No. 344, Session 2019, 3/4/19, at 2. While here Children are not the victims of Father's criminal acts, Mother, who is Father's adoptive child, is his legal child. Thus, presumably, Father's rights could be mandatorily terminated under this proposed bill were it to be enacted into legislation. We note, however, that the proposed bill does not account for the contemplated adoption requirement under section 2512, a jurisdictional prerequisite to a court's substantive termination analysis -- the issue preventing Mother from terminating Father's rights in this case.

- 13 -

that is absurd, impossible of execution or unreasonable).[22]  In fact, in *In re R.B.F.*, our Supreme Court recognized that "[i]t is a settled rule that in the construction of statutes an interpretation is never to be adopted that would defeat the purpose of the enactment, if any other reasonable construction can be found which its language will fairly bear."  *Id.* 803 A.2d at 1203.

Mother's position is not unique; in fact, the plight of parents in her exact situation is widespread.  In 2015, the 114th United States Congress proposed legislation directing the United States Attorney General to provide grants to states that have laws in place which terminate the parental rights of men who father children through rape.[23]  *See* H.R. 1257, 114th Cong. (2015-2016) (Rape Survivor Child Custody Act).  The findings of this act recognize "that there are between 25,000 and 32,000 rape-related pregnancies annually in the United States."  *Id.* at § 2, Findings.  In 2015, the act became law as part of the Justice for Victims of Trafficking Act.  *See* P.L. No. 114-22 (5/29/15), Title IV – Rape Survivor Child Custody Act, § 404.  Currently, 30 states allow

---

[22] Interestingly, a 1979 House of Representative's bill suggested amending the Adoption Act of 1970 to provide for the forfeiture of parental rights in similar circumstances, stating, "No person shall have any parental rights involving children who were conceived as a result of rape for which he was convicted."  H.B. 213, Regular Session 1979-1980, § 311.1 (Pa. 1979).  Unfortunately, that suggested language was never included in our Adoption Act.  It, however, would solve the problem we are presented with today.

[23] The act provides grants to states that have enacted "a law that allows the mother of any child [who] was conceived through rape to seek court-ordered termination of the parental rights of her rapist with regard to that child, which the court is authorized to grant upon clear and convincing evidence of rape."  *See* 34 U.S.C. § 21303.

for the termination of parental rights of perpetrators of sexual assault who father a child as a result of their actions, while 20 states allow some form of restriction on the parental rights of those perpetrators.  National Conference of State Legislatures, Parental Rights and Sexual Assault (4/17/17), http://www.ncsl.org/research/human-services/parental-rights-and-sexual-assault.aspx.  In addition, "nearly 30 bills have been introduced in 17 states during the 2017 legislative session addressing some aspect of [the] parental rights . . . of perpetrators."  *Id.*  Our own state legislature has restricted the custody and visitation rights of perpetrators like Father.  *See* 23 Pa.C.S. § 5329.[24]  Pennsylvania has yet to do so, however, in the termination context.

_____

[24] We recognize that under the Custody Act, Part VI of the Domestic Relations Act, Mother can ensure that Father will have no right to legal or physical custody of Children.  In 2015, Pennsylvania State Senator Randy Vulakovich authored a Co-Sponsorship Memorandum acknowledging the very situation we are presented with today.  In his memo, Senator Vulakovich stated:

> **Currently, Pennsylvania law only allows for the termination of parental rights of convicted rapists pending adoption.**  As it stands, if a victim of rape chooses to keep the child conceived as a result of the rape, she could be forced to interact with the perpetrator on a regular basis through visitation.  In addition, if a victim chooses to prosecute her abuser and retain parental rights of the child, the abuser could threaten to pursue custody or visitation with the child if the victim does not drop the charges.  Furthermore, if the parental rights of the offender are terminated, the obligation to pay child support is also terminated.

Senate Co-Sponsorship Memorandum (Session of 2015-2016) by Senator Randy Vulakovich, 2/6/15 (emphasis added).  That same year, section 5329 of the Custody Act was amended to include language addressing Senator Vulakovich's concerns.  That section provides:

(b.1) Parent convicted of certain sexual offenses.--

(1) Notwithstanding any provision of this chapter to the contrary and subject to paragraph (2), **if a parent who is a victim of any of the offenses set forth in this paragraph objects, no court shall award any type of custody set forth in section 5323 (relating to award of custody) to the other parent of a child conceived as a result of any of the following offenses for which the other parent has been convicted:**

**18 Pa.C.S. § 3121 [rape].**

\* \* \*

(2) A court may award any type of custody set forth in section 5323 to a parent who has been convicted of an offense under paragraph (1) if:

(i) the parent who is a victim had an opportunity to address the court;

(ii) the child is of suitable age and consents to the custody order; and

(iii) the court determines the award is in the best interest of the child.

(3) Paternity of the child shall be established by voluntary acknowledgment of paternity or blood, genetic or other paternity testing acceptable to the court. The cost of the testing shall be borne by the parent who was convicted of the offense.

23 Pa.C.S. § 5329 (b.1) (emphasis added).

Mother is aware of this protection that is afforded to her and Children under section 5329, noting in her termination petition that "[b]ecause [Father] pled guilty to two violations of 18 Pa.C.S. § 3121[, rape,] he has no right to any physical or legal custody of [Children or any] right to any visitation with [Children]" under section 5329. Termination Petition, 8/18/18, at ¶¶ 46-47. Therefore, if Mother appropriately objects, Father will be precluded from having any form of legal or physical custody of Children. While we are confident that section 5329(b.1) can effectively prevent Father from exercising his custodial or visitation rights to Children, we sympathize with Mother's prayer to sever all legal ties that Father has to Children.

Recent cases discussing section 2512(b)'s contemplated adoption requirement involve situations where the petitioner is seeking termination of the other parent's parental rights as a precursor to the adoption process. *See In re M.R.D.*, *supra* (proposed grandparent adoption); *In re J.B.*, *supra* (same); *In re J.M.* (same); *see also In re R.B.F.*, *supra* (proposed same-

_____

We also note that pursuant to 23 Pa.C.S. § 4321, a parent is liable for the support of his or her unemancipated child, aged 18 years or younger:

> [W]hether or not parental rights of the parent have been terminated due to a conviction for any of the following where the other parent is the victim and a child has been conceived as a result of the offense:
>
> > (i) 18 Pa.C.S. § 3121 (relating to rape);
> >
> > (ii) 18 Pa.C.S. § 3122.1 (relating to statutory sexual assault);
> >
> > (iii) 18 Pa.C.S. § 3124.1 (relating to sexual assault) where the offense involved sexual intercourse;
> >
> > (iv) 18 Pa.C.S. § 3124.2 (relating to institutional sexual assault) where the offense involved sexual intercourse; or
> >
> > (v) 18 Pa.C.S. § 4302 (relating to incest) where the offense involved sexual intercourse.
>
> Paternity of the child under this paragraph shall be established through voluntary acknowledgment of paternity or blood, genetic or other type of paternity test acceptable to the court. The cost of the testing shall be borne by the parent who was convicted of the offense.

23 Pa.C.S. § 4321(2.1). Thus, Father is still responsible to pay support for Children until they become emancipated and reach the age of 19.

sex parent adoption); ***In re E.M.I.***, ***supra*** (same). However, that is simply not the situation in the present case.

First, it is not necessary that Children be adopted. Mother is a fit and able parent who has been singularly caring for her Children's emotional, physical and social well-being their entire lives. Thus, there is no need to establish a "new 'parent-child' relationship." ***In re L.B.J***, ***supra***; ***In re T.R.***, ***supra***; ***In re B.E.***, ***supra***. Second, Mother has no intention to subvert the adoption process in seeking termination of Father's parental rights to Children. She is not seeking termination in order to change Children's surname or punish Father for being ineffective or merely negligent. ***Cf. In re B.E.***, ***supra*** (case decided over twenty-five years ago, noting "singular concern of the Adoption Act" is to "establish a new 'parent-child' relationship" and in order to achieve that goal, through the termination of the natural parents' rights, must include contemplated adoption). Rather, Mother is looking to sever Father's parental rights to Children as a result of his criminal and sexually predatory behavior perpetrated against Mother for over 20 years, in an effort to put an end to a cycle of abuse, and to provide Children with a chance to grow up in a loving, supportive and caring home with no fear of reprisal from Father. Therefore, requiring Mother to aver a contemplated adoption under section 2512(a)(1) defeats the purpose of the statute's enactment. ***R.B.F.***, ***supra***. ***See also M.R.D.***, ***supra*** (purpose of contemplated adoption provision is to dispense with need for parental consent to an adoption when, by choice or neglect, parent has failed to meet continuing needs of child).

*R.B.F.* involved two companion cases where same-sex partners of the respective petitioners sought to formalize their parental relationship with the petitioners' children, while at the same time permit the legal parents to retain their parental rights to children. The Supreme Court remanded the case to the trial court for a hearing to determine whether petitioners could demonstrate, by clear and convincing evidence, cause as to whether the "purpose of [s]ection 2711(d)'s relinquishment of parental rights requirement will be otherwise fulfilled or is unnecessary under the particular circumstances of [their] case[s]." 803 A.2d 1203. The *R.B.F.* Court relied on section 2901 of the Act upon to support its remand decision, which states, in relevant part:

> Unless the court for cause shown determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated . . . and all other legal requirements have been met.

23 Pa.C.S. § 2901. In coming to its decision, the Court recognized that "there is no other reasonable construction of the [s]ection 2901 'cause shown' language other than to conclude that it permits a petitioner to demonstrate why, in a particular case, he or she cannot meet the statutory requirements." *R.B.F.*, 803 A.2d at 1202-1203.

Similarly, we find that the overwhelming evidence of record "shows cause" under section 2901 as to why Mother should be relieved of section 2512's contemplated adoption requirement in order to terminate Father's

parental rights.[25]   Mother has no other legal means to terminate Father's parental rights save for the termination provisions found in the Adoption Act that are a prerequisite to adoption.  Where Mother has no intention of placing Children for adoption, she is being held to a requirement that is simply "unnecessary under the particular circumstances of [her] case." *Id.* at 1203.

Echoing Pennsylvania Supreme Court Justice Debra Todd's views in *In re M.R.D.*,[26] "in today's times, societal norms pertaining to what constitutes a family are constantly evolving." *Id.*, at 1129.  The time has come to reevaluate and revisit the adoption and termination of parental rights processes under our current law.  To force Mother to either marry so she can have her new spouse adopt Children to fulfill section 2512's contemplated adoption requirement, or compel her to relinquish her own parental rights to Children to ensure their safety from Father, is simply senseless and an

---

[25] The hurdle in this case for Mother is the contemplated adoption requirement.  Because we conclude that Mother is excused from the requirement that she place her Children for adoption, this necessarily dispenses with the requirements under section 2711(d) that she relinquish her own parental rights to Children or re-marry under section 2903. *Cf. M.R.D.*, 145 A.3d at 1129 (where mother petitioned to have father's rights terminated and maternal grandfather adopt child, because she did not meet burden of showing proposed adoption would serve underlying purpose of relinquishment, mother was not excused from requirement that she relinquish her parental rights under section 2711).

[26] We, too, are cognizant of the ever-changing landscape of the family unit. In fact, in 2016 roughly 23% of children in the United States, under the age of 18, were living in single-mother households, like the current case. https://www.census.gov/data/tables/2018/demo/families/cps-2018.html (last visited 5/13/19).

abomination under the circumstances. *See Commonwealth ex re. Grimes v. Yack*, 433 A.2d 1363, 1382 (Pa. Super. 1981) ("The relationship between parent and child should be broken only with the greatest reluctance.") (citation omitted). One can hardly envision how forcing Mother to make this kind of choice promotes the best interests of Children, which is of paramount importance in such matters.[27]

Thus, we reverse the orders denying Mother's petitions to involuntarily terminate Father's parental rights to Children. In doing so we are mindful to limit the holding of this case to its facts so that "[t]he exercise of such discretion does not open the door to [terminating the parental rights of one parent by another parent when adoption is not contemplated], *R.B.F.*, 803 A.2d at 1202, and to "ensure that we do not open the floodgates to . . . gamesmanship." *In re M.R.D.*, 145 A.3d at 1129 (where Supreme Court denied mother's petition to terminate father's parental rights, cautioning Mother's actions "open[ed] the door to the misuse of adoption proceedings by spiteful parents as a means to involuntarily terminate the rights of unwanted parents, potentially allowing grandparents, cousins, pastors, coaches, and a litany of other individuals who have a close relationship with a child to stand in as prospective adoptive parents so that termination may be achieved.").

---

[27] The irony is not lost on us that the Adoption Act permits "any individual" to adopt a child in this Commonwealth, which necessarily includes a single parent, yet Mother is forced to relinquish her own parental rights and put Children up for adoption under section 2512 if she wants to terminate Father's rights. *See* 23 Pa.C.S. § 2312 (section of Adoption Act stating that "[a]ny individual may become an adopting parent.").

We remand this case to the trial court to proceed with termination proceedings, including a full and proper hearing, as Mother has demonstrated cause for her non-compliance with the contemplated adoption requirement of section 2512(a)(2).

Orders reversed.[28]  Case remanded for proceedings consistent with this decision.  Jurisdiction relinquished.[29]

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/19

---

[28] There seems to be no question that, substantively, Father's rights could be involuntarily terminated under sections 2511(a)(7) and (11) of the Adoption Act.  Moreover, based on the horrific history of abuse that Father perpetrated upon Mother and the circumstances under which Children were conceived, it is also evident that terminating Father's parental rights would benefit the "developmental, physical and emotional needs and welfare of" Children under section 2511(b).  However, upon remand the court must conduct the proper involuntary termination inquiries at a hearing.

[29] Having disposed of Mother's appeal on the basis of her first issue, we need not address the remaining constitutional issues she raises on appeal.